IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- :
DALE KRUMHEUER, : CASE NO. 1:09-CV-00582
:
Plaintiff : MEMORANDUM OF OPINION AND
: ORDER GRANTING DEFENDANT'S
-vs- : MOTION FOR SUMMARY JUDGMENT
: (Resolving Docket #13 and #16).
:
GAB ROBINS NORTH AMERICA, INC. :
:
Defendant. :
------------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Plaintiff, Dale Krumheuer, initiated this lawsuit after he was terminated from his position as a claims adjustor for GAB Robins North America, Inc. ("GAB"). Mr. Krumheuer asserts the following claims: (1) handicap discrimination in violation of Ohio Revised Code §4112.99; (2) age discrimination in violation of O.R.C. §4112.14(B); (3) interference with rights under the Family and Medical Leave Act, 29 U.S.C. ¶2601, et seq. ("FMLA"); (4) retaliation for exercising FMLA rights; (5) breach of implied contract; (6) intentional infliction of emotional distress; and (7) promissory estoppel. (Docket #1).

On 15 January 2010, GAB moved for summary judgment (Docket #13). Mr. Krumheuer opposed GAB's motion (Docket #15) and GAB replied (Docket #17). GAB also filed a motion to strike certain portions of Mr. Krumheuer's affidavit, which was attached to

his brief in opposition ("Krumheuer Aff."). (Docket #16).[1] Mr. Krumheuer did not respond to GAB's motion to strike. For the reasons discussed below, the Court will grant Defendant's motion for summary judgment and motion to strike, in part.

**I.  BACKGROUND**

GAB "provides insurance carriers and self-insured entities with loss adjusting and claims administration services for property and casualty claims." (Docket #13 at 2, Affidavit of Lynn Kral, attached as Exhibit A thereto, ("Kral Dep.") at ¶1). GAB hired Mr. Krumheuer to work as a claims adjustor in the Cleveland office in September 2002. (Docket #13 at 2, Dale Krumheuer Deposition, attached as Exhibit B thereto ("Krumheuer Dep.") at 23). Mr. Krumheuer was initially supervised by Gary Gottschalk, the branch manager of the Cleveland office. (Krumheuer Dep. at 47-47; 52). In the last five months of his employment, Mr. Krumheuer was supervised by Ms. Kral who assumed the branch manager position. (Id. at 52). Another supervisor Pat Lunn along with the branch manager conducted Mr. Krumheuer's annual reviews. (Id. at 66).

Beginning in the latter half of 2006, GAB noticed several performance problems with Mr. Krumheuer. (Docket #13 at 3-7). Mr. Krumheuer acknowledges the following performance issues: (1) that as of 9 October 2006, his diaries remained overdue; and (2) one client told GAB that it did not want Mr. Krumheuer handling its files anymore. (Krumheuer Dep. at 85-86, 93). Also attached to GAB's motion was a document titled "Written Warning," issued by Ms. Kral on 18 January 2007, to Mr. Krumheuer. (Docket

---

[1] In its motion, GAB seeks to strike paragraphs 3, 7, 8, and 10 of the Krumheuer Aff. For the reasons set forth herein, the Court will grant the motion in part. The Court will decline GAB's motion as it relates to paragraph 7 of the Krumheuer Aff. because that paragraph was not considered in the Court's resolution of GAB's motion for summary judgment.

2

#13, Exhibit G). Mr. Krumheuer signed the document and acknowledged his signature. (Krumheuer Dep. at 107-08). The written warning outlined various other performance problems. See id.

On or about 9 October 2009, Mr. Krumheuer "requested an FMLA leave of absence from 9 October 2006, until 1 December 2006, due to a heart problem, which leave GAB allowed. (Docket #13 at 4; Krumheuer Dep. at 89-90). Mr. Krumheuer was cleared to return to work on 1 December 2006. (Id. at 95). On or about 12 December 2006, Mr. Krumheuer's physician advised that he only work ½ days until 25 December 2006, but without restriction. (Id. at 96; Docket #13 at 5). GAB accommodated this request. Id.

Despite Mr. Krumheuer's assertions otherwise, Mr. Krumheuer's performance issues and utilization of FMLA leave, as described above, were not why he was terminated according to GAB. (Docket #17 at 1; Kral Aff. at ¶7). GAB maintains that Mr. Krumheuer was terminated "in an economically motivated group termination affecting more than 80 GAB employees nationwide." (Kral Aff. at ¶7). Mr. Krumheuer acknowledges that GAB told him he was being terminated because of a work force reduction. (Krumheuer Dep. at 121-22). Ms. Kral states that she "was instructed to select two individuals from the Cleveland branch for termination *** and selected Mr. Krumheuer and Don Hoetzel, each based upon performance." (Kral Aff. at ¶7).

As to his claim for age discrimination, Mr. Krumheuer states that GAB "did not terminate similarly situated younger employees." (Docket #15 at 9). GAB states that Mr. Krumheuer was 50 years old when he was terminated and because his "position was eliminated in a nationwide reduction in force, he was provided a list of the ages and job titles of all individuals in the GAB employee population who were and were not selected for

3

termination." (Docket #13 at 7; Kral Aff. at ¶8). A review of the list, according to GAB, demonstrates that "the average age of the 13 employees retained" in the Cleveland office was 49.69 "whereas the two individuals selected for termination were 50 years old (plaintiff) and 49 hears old (Mr. Hoetzel)." (Docket #13 at 8; <u>see also</u> Krumheuer Dep. at 131-31; 150). "All of the eight employees in the loss-adjusting group in Cleveland were over the age of 43 at the time of the group termination; four were more than 59 years old." (Kral Aff. ¶8). GAB further points out that, "[n]o individual has been hired to replace Mr. Krumheuer." (Kral Aff. at ¶9). Mr. Krumheuer admits that, "several existing employees at GAB," both younger and older "assumed responsibility" for his files after he "was no longer there." (Krumheuer Dep. at 145). Mr. Krumheuer never complained of any form of discrimination to GAB. (Krumheuer Dep. at 64).

As to his claim for handicap discrimination, Mr. Krumheuer alleges that he was terminated because of his heart condition as evidenced by the fact that GAB did not terminate any similarly situated non-handicapped person. (Docket #1 at ¶¶5-6; Docket #15 at 11). GAB states that this claim must fail because Mr. Krumheuer has not established that he is disabled pursuant to O.R.C. 4112.99. (Docket #13 at 9).

In his claims for promissory estoppel and breach of implied contract, Mr. Krumheuer alleges that he was promised long term employment if he continued to be productive. (Docket #1 at ¶35; Krumheuer Aff. at ¶3). He also seems to allege (in his complaint only) that GAB's anti-discrimination policy should be construed as an implied contract. (Docket #1 at ¶27). GAB points out that Mr. Krumheuer has failed to establish the requisite promise to trigger the exception to Ohio's at-will employment rule. (Docket #13 at 18).

Finally, Mr. Krumheuer alleges that his termination constituted an intentional infliction of emotional distress. (Docket #1 at ¶31). GAB asserts that this complaint must fail because Mr. Krumheuer has provided no evidence of the type of emotional distress required by Ohio law in employment termination situations. (Docket #13 at 19-20).

## II.     SUMMARY JUDGMENT STANDARD

When "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" summary judgment shall be entered in favor of a moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial", quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986), quoting Fed. R. Civ. P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary

judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

### III. LAW AND ANALYSIS

#### A. Disability Discrimination (Count One)

Mr. Krumheuer alleges that GAB discriminated against him by terminating him after he was "diagnosed with coronary heart disease." (Docket #1 at ¶¶5-6). Mr. Krumheuer maintains that "the circumstances surrounding his termination give rise to an inference of discrimination because Defendant did not terminate similarly situated non-handicapped employees[.]" (Docket #15 at 11). GAB argues that this claim should be dismissed because Mr. Krumheuer "was not a 'qualified individual with a disability' entitled to protection under Ohio Revised Code §4112.99." (Docket #13 at 9). GAB maintains that Mr. Krumheuer's "medical condition does not constitute a disability as defined by Ohio statute and he was not qualified for his position because he was not meeting his employer's expectations. Id. Moreover, GAB states, Mr. Krumheuer cannot meet the heavy burden of establishing discrimination "when a reduction in force is required by economic necessity." Id., citing Hamilton v. Sysco Food Servs. of Cleveland, Inc., 866 N.E.2d 559, 562 (Ohio App. 8 Dist. 2006).

"To establish a prima facie case of disability discrimination, the plaintiff must demonstrate (1) that he is disabled, (2) that an adverse employment action was taken by an employer, at least in part, because of the disability, and (3) that the plaintiff, though disabled, can safely and substantially perform the essential functions of the job in question." Allen v. Totes/Isotoner Corp., 123 Ohio St.3d 216, 226 (2009), citing Hazlett v. Martin Chevrolet, Inc., 25 Ohio St.3d 279, 281 (1986).

7

Mr. Krumheuer contends he has established a prima facie case of disability discrimination. He argues first that he has a disability; he "was diagnosed with coronary heart disease" on 9 October 2006. (Krumheuer Aff. at ¶4). Mr. Krumheuer states that he was qualified for the position because he had met the "objective hiring requirements" of the position as established by the fact that GAB hired him for the position. (Docket #15 at 9). He then argues he was discharged while other similarly situated non-handicapped employees were not. (Id. at 11). Here, there is no showing that Mr. Krumheuer satisfied the first prong of the test, i.e., that he was disabled by virtue of the fact that he had a heart attack and/or was diagnosed with "coronary heart disease."

Pursuant to O.R.C. §4112.01(A)(13), disability "means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of physical or mental impairment; or being regarded as having a physical or mental impairment." O.R.C. §4112.01(A)(13). A "physical or mental impairment" includes various diseases and conditions, including heart disease. O.R.C. §4112.01(A)(16)(a)(iii).

Here, Mr. Krumheuer has not set forth specific facts to show that he was disabled or was regarded as disabled.[2] He has not established, beyond the bare assertions in his affidavit that he suffers from heart disease and/or how his condition impacted any major life activity. Mr. Krumheuer never provided any written documentation from a medical provider

---

[2] Ms. Kral states that she did not know when Mr. Krumheuer left work on 9 October 2009, that he "was experiencing any serious health condition at that time." Moreover, Mr. Krumheuer worked without restrictions from 1 December 2006, until 11 December 2006, after which he requested and received an accommodation, without medical documentation, to "half-days, again without restrictions, from December 12, 2006, through December 25, 2006." (Docket #13 at 5, citing Krumheuer Dep. At 95-96).

8

to GAB despite being asked to do so. (Docket #13 at 6, citing Krumheuer Dep. at 112-14). In fact, "the only medical documentation Plaintiff provided excusing him from work at any time between December 26, 2006, and the time of the termination of his employment was a January 17, 2007, excuse for a scheduled appointment that day." Id.

Mr. Krumheuer states in his affidavit that, *during his illness*, he "was substantially limited in [his] major life activities, such as performing manual tasks, working and walking,"[3] but his deposition testimony does not fully support this claim. (Krumheuer Aff. at ¶8). In his deposition, Mr. Krumheuer testified that at the time of his termination, he lived alone, could drive himself to work, feed and bathe himself. (Krumheuer Dep. at 117-121). In fact, the only "daily life activities" that Mr. Krumheuer was unable to perform was walking long distances and some household maintenance activities (like shoveling snow, cleaning gutters, raking leaves, and other "strenuous" activities). Id. Mr. Krumheuer also stated that he was unable to go fly-fishing for "almost a year." (Id. at 121).

Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact. Id. "The absence of additional evidence to support a party's position beyond his own self-serving testimony is insufficient to

---

[3] This statement, paragraph 8 of the Krumheuer Aff., is the subject of GAB's motion to strike. (Docket #16). The Court declines to strike the statement because Mr. Krumheuer's statement in his affidavit and his deposition testimony are not clearly contradictory. Reid Machinery, Inc. v. Lanzer, 614 F.Supp.2d 849, 868 (N.D. Ohio), citing Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir.2006). The deficiencies in paragraph 8 of Mr. Krumheuer's affidavit go to the weight or viability of the evidence he presents vis-a-vis Fed. R. Civ. P. 56 and will be addressed on that basis.

overcome a motion for summary judgment." Britenriker v. Mock, 2009 WL 2392917 at FN1 (N.D. Ohio), citing Bryant v. Mahoning County Bd. of Comm'rs, 2007 WL 1725314, at *7 (N.D.Ohio); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir.1994). "Conclusory statements are insufficient in summary judgment proceedings." Shaw v. Danley, 202 F.3d 270 (6th Cir. 2000), citing Mitchell, 964 F.2d at 584. See also Brooks v. American Broadcasting Companies, Inc., 999 F.2d 167, 172 (6th Cir. 1993)(noting that in summary judgment analysis, "the district court is not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question").

Mr. Krumheuer has failed to meet his burden under Fed. R. Civ. P. 56 or Allen, 123 Ohio St.3d at 229. Accordingly, the Court holds that Mr. Krumheuer is not disabled, nor regarded as disabled, within the meaning of Ohio's disability discrimination statute. Thus, he has failed to establish the first element of a valid disability claim. Accordingly, GAB will be entitled to summary judgment in its favor on Count One of Mr. Krumheuer's complaint.

### B.     Age Discrimination (Count Two).

Mr. Krumheuer alleges that GAB discharged him because of his age. (Docket #1 at ¶15). Mr. Krumheuer alleges that he is a member of a protected class (age 54), who met the objective hiring requirements and was terminated. (Docket #15 at 9). Mr. Krumheuer further maintains that, "the circumstances surrounding his termination give rise to the inference of discrimination because Defendant did not terminate similarly situated younger employees." Id.

GAB maintains that Mr. Krumheuer cannot establish a prima facie case for age discrimination because "he was not qualified for his position, was not replaced by an individual outside of the protected age group, and was not singled out for impermissible

10

reasons." (Docket #13 at 13).  GAB points out that Mr. Krumheuer acknowledged that his "duties were absorbed by existing employees, some older and some younger than" Mr. Krumheuer. (Id., citing Krumheuer Dep. at 145).

Under Ohio law, it is unlawful for an employer to discriminate against an employee on the basis of age. O.R.C. §§ 4112.02(A) and 4112.14. "The federal Age Discrimination in Employment Act is applicable to state law claims brought pursuant to Ohio age discrimination law." Minadeo v. ICI Paints, 398 F.3d 751, 763 (6th Cir.2005), quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 357 (6th Cir.1998) (holding that "[u]nder Ohio law, the elements and burden of proof in a state age-discrimination claim parallel the ADEA analysis").

"To establish a prima facie case of age discrimination, plaintiff bears the burden of demonstrating that (1) he was a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) either he was replaced by a person outside the protected class, or he was treated differently than a similarly situated non-protected employee." Mitchell v. Toledo Hosp., 964 F.2d 577, 582-83 (6th Cir.1992).

"If the plaintiff establishes [a] prima facie case, the burden then shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'"  Kline v. Tennessee Valley Authority, 128 F.3d 337, 342 (6th Cir. 2003), , quoting Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the defendant meets this burden, the plaintiff must demonstrate that the employer's stated reason was pretext. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).

A plaintiff may establish a prima facie case of discrimination either through direct evidence of intentional discrimination, or circumstantial evidence giving rise to an inference

11

of discrimination, the latter of which is analyzed under the foregoing McDonnell Douglas paradigm. Abdulnour v. Campbell Soup Supply Co., 502 F.3d 496, 501-502 (6th Cir. 2007), citing McDonnell Douglas, 411 U.S. 792.

In this case, Mr. Krumheuer asserts one piece of circumstantial evidence of age discrimination; i.e., that discrimination is evident because GAB did not terminate similarly situated younger employees. (Docket #15 at 9). This will not be sufficient to avoid summary judgment.

As noted in Kirkland v. St. Elizabeth Hosp., 120 F.Supp.2d 660, 666 (N.D. Ohio):

The Sixth Circuit has further articulated a plaintiff's burden of proving a prima facie case in a work force reduction situation.

> A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

Barnes v. GenCorp Inc., 896 F.2d 1457, 1465 (6th Cir.1990). Under such circumstances, a plaintiff will not be able to meet the fourth element of the McDonnell Douglas test because he or she was not replaced by anyone. Therefore, the plaintiff must present "additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." Id.

Based on the foregoing, and inasmuch as Mr. Krumheuer acknowledges that he was not replaced and has no other evidence of age discrimination, GAB will be entitled to summary judgment on Count Two of Mr. Krumheuer's complaint.

    **C.**    **FMLA (Counts Three and Four).**

Mr. Krumheuer asserts that GAB denied his rights under the FMLA and retaliated against him for exercising his FMLA rights.

Under the FMLA, qualifying employees are entitled to up to twelve weeks of unpaid leave each year "if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Edgar v. JAC Products, Inc., 443 F.3d 501, 506, quoting 29 U.S.C. § 2612(a)(1)(D)). The parties do not dispute that Mr. Krumheuer was entitled to FMLA leave, that he took FMLA leave from 9 October 2006, through 1 December 2006 ("First Leave"), and that he notified GAB that he needed additional leave for heart surgery in February 2007 ("Second Leave"). What is in dispute is whether Mr. Krumheuer was terminated on 7 February 2007, because of his notice of intent to take the Second Leave for a surgery scheduled for 13 February 2007, and whether such termination interfered with his FMLA rights and/or whether the termination was in retaliation exercising his FMLA rights.

The Sixth Circuit acknowledges two separate theories upon which a party can recover under the FMLA: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." Killian v. Yorozu Automotive Tennessee, Inc., 454 F.3d 549, 555 (6th Cir. 2006), quoting Hoge v. Honda of America Mfg., Inc., 384 F.3d 238, 244 (6th Cir. 2004). A plaintiff can meet his burden through direct or circumstantial evidence. Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 707 (6th Cir. 2008).

In Skrjanc v. Great Lakes Power Service Co., The Sixth Circuit Court of Appeals has set forth three elements that a plaintiff must establish to avoid summary judgment on an FMLA claim. Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314-15 (6th

13

Cir.2001).   Mr. Krumheuer must provide evidence raising an issue of fact that: (1) he availed himself of a protected right under the FMLA by notifying GAB of his intent to take leave; (2) he was adversely affected by an employment decision; and (3) a causal connection exists between Mr. Krumheuer's availing himself of leave and/or requesting leave and GAB's adverse employment decision. Skrjanc, 272 F.3d at 314-15.  "Under the causation element, a plaintiff must show that he was discharged because he took leave - or at least that his taking of leave was a "negative factor" in the employer's decision to discharge.'" Pharakhone v. Nissan N. Am., Inc., 324 F.3d 405, 408 (6th Cir. 2003); Heady v. United States Enrichment Corp., 146 Fed. Appx. 766, 769-70 (6th Cir.2005) (noting that, "to survive summary judgment, [plaintiff] must provide sufficient evidence to show that the exercise of FMLA rights was a motivating factor in [the] discharge.").

Mr. Krumheuer argues that he has established the causal connection because he was terminated within14 days of advising GAB that he intended to take FMLA leave for a heart surgery on 13 February 2007. (Docket #15 at 5; Krumheuer Aff. at ¶¶5-6).

Mr. Krumheuer is correct in that temporal proximity can be sufficient to satisfy the causation element when no legitimate business purpose is apparent (see Heady, supra); however, "the causation element may not be established in situations such as a corporate reorganization or reduction in force, if the employee would have lost her job even if she had not taken FMLA leave."  Nameth v. Celina Financial Corp., 2006 WL 561860 (N.D. Ohio, 2 March 2006)(Wells, J), citing Heady (affirming summary judgment for employer where plaintiff's employment was terminated as part of a reduction in force); Ostermyer v. Toledo Clinic, Inc., 2005 WL 927120, at *5 (N.D.Ohio, 18 April 2005) (affirming summary judgment for employer where defendant did not hire anyone to replace plaintiff).

14

GAB concedes that Mr. Krumheuer has established the first two elements. GAB argues, however, that there is no issue of fact to establish the causation factor because Mr. Krumheuer was terminated due to a work force reduction. (Docket #17 at 3-4). Mr. Krumheuer does not address GAB's assertion that his termination was due the work force reduction.[4] Mr Krumheuer simply alleges that GAB "interfered in [his] right to remain employed after returning from FMLA leave in December 2006, and prior to seeking a subsequent FMLA leave[,]" and retaliated against him by terminating him within two weeks of his notification to GAB of his intent to take subsequent FMLA leave. (Docket #15 at 5-6).

Given that GAB has provided unrebutted evidence[5] that Mr. Krumheuer was terminated due to a work force reduction, Mr. Krumheuer cannot and did not establish the requisite causation between his assertion of his FMLA rights and his termination. See Heady, Ostermyer, Nemeth, supra. Accordingly,  Mr. Krumheuer has not met his burden under Rule 56(e) or Celotex, which require "the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. GAB is entitled to summary judgment on Counts Three and Four of Mr. Krumheuer's complaint.

> **D.**   **Breach of Implied Contract and Promissory Estoppel (Counts Five and Seven )**

---

[4] GAB acknowledges that the Cleveland office was required to terminate two persons as part of the company-wide work force reduction and that Mr. Krumheuer was chosen as one of the two people to be terminated because of performance issues. (Docket #17 at 4). In his brief in opposition and affidavit, however, Mr. Krumheuer only disputes the fact that he had performance problems; he does not dispute the work-force reduction, or how GAB made its decision about who to terminate in the reduction.  (Docket #15 at 6).

[5]See Kral Aff. at ¶¶7-8; Krumheuer Dep. at 121-22).

15

Mr. Krumheuer claims that GAB's "discrimination against [him] was against [GAB's] written policies prohibiting discrimination in the workplace." (Docket #1 at ¶27). Mr. Krumheuer further states that GAB "promised [him] that his employment would be long term and [he] was led to believe that he would be treated fairly and not subject to discrimination." (Id. at ¶35).

GAB states that, to the extent that Mr. Krumheuer is alleging that GAB's "anti-discrimination policies constitute[ ] an implied contract," Mr. Krumheuer was an at-will employee. (Docket #13 at 18). GAB acknowledges, however, that an exception to Ohio's "at[-] will employment rule *** recognizes that at[-]will employment may be modified by contract or promissory estoppel." (Id., citing Mers v. Dispatch Printing Co., 19 Ohio St.3d 100, 103-04 (1985)). GAB maintains, however, that Mr. Krumheuer "can prove no reasonable reliance on any alleged promise of continued employment because he expressly agreed that his employment was terminable at will." Id. Moreover, Mr. Krumheuer is unable to show "a 'meeting of the minds' of the parties that his employment was other than at-will." (Id. at 19).

> As stated in Wright v. Honda of Am. Mfg., Inc.:
>
> In general, under the employment-at-will doctrine, the employment relationship between employer and employee is terminable at the will of either; thus, an employee is subject to discharge by an employer at any time, even without cause. See Henkel v. Educational Research Council of Am., 45 Ohio St.2d 249, 255 (1976). However, in Mers, 19 Ohio St.3d at 104-105, we first recognized the harshness of this rule and carved out two exceptions to the employment-at-will doctrine: (1) the existence of implied or express contractual provisions which alter the terms of discharge; and (2) the existence of promissory estoppel where representations or promises have been made to an employee.

16

Wright v. Honda of Am. Mfg., Inc., 75 Ohio St.3d 571, 574 (1995). In order to overcome a summary judgment motion and to raise a factual issue as to whether an employment-at-will agreement has been altered by an implied agreement, the trier of fact can consider *** the history of the relations between the employer and employee[,] the 'facts and circumstances' surrounding the employment at-will relationship[.]" Id. at 574-75, citing Mers, supra.

Mr. Krumheuer states only that he "was told by Defendant that his employment was long term and that he would only be terminated for good cause."[6] (Docket #15 at 6-7, Krumheuer Aff. at ¶3). Moreover, GAB seeks to strike this statement in its motion to strike because it contradicts Mr. Krumheuer's deposition testimony. (Docket #16 at 3-4).

In his deposition, Mr. Krumheuer testified that:

> - Pat Lunn, Gary Gottschalk, and Allen Spears made a "blanket statement" that "as long as you're productive, you'll always have a job[,]" but that statement was never in writing. (Krumheuer Dep. at 164-65).
>
> - When Mr. Lunn saw his monthly production numbers, he "made statements like, 'You're the man. Wish we had more people like you. Wish I could teach everybody else how to do what you do.'" (Id. at 165).
>
> - After he received an award, Mr. Allen told him that he was "always going to be his ace in the hole." (Id. at 168).

Other than the foregoing, Mr. Krumheuer acknowledges that no one from GAB made any oral or written promises that his employment would be long term. (Id. at 168). GAB also points to Mr. Krumheuer's admission that he knew his employment was terminable at will, received a document so stating, and signed it. (Id. at 41). Mr. Krumheuer again

---

[6] Of note, Mr. Krumheuer does not address GAB's motion as it relates to his claim for breach of implied contract. Regardless, the Court's analysis necessarily disposes of both the claim for breach of implied contract and promissory estoppel.

17

acknowledged that his employment was terminable at will in January of 2007, less than one month prior to his termination. (Id. at 169).

Based on the foregoing, it is clear that Mr. Krumheuer's affidavit directly contradicts his previous sworn testimony. "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." Reid Machinery, 614 F.Supp.2d at 868, citing Aerel, 448 F.3d at 908. Mr. Krumheuer has not attempted to explain the contradiction. As such, paragraph 3 of Mr. Krumheuer's affidavit is stricken and will not be considered by the Court.

Inasmuch as Mr. Krumheuer has pointed to no other evidence or "facts and circumstances" as outlined in Wright and Mers, the Court finds that no promises were made to Mr. Krumheuer about long term employment upon which he could have justifiably relied. The exception to Ohio's at-will doctrine does not apply here.

GAB will be entitled to summary judgment in its favor on Counts Five and Seven of Mr. Krumheuer's complaint.

### E.     Intentional Infliction of Emotional Distress (Count Six)

Mr. Krumheuer alleges that GAB's "discrimination against [him] resulted in the intentional infliction of emotional distress on [him]." (Docket #1 at ¶31). Mr. Krumheuer states that his wrongful discharge "came without any warning and caused [him] loss of sleep, extreme nervousness and severe emotional distress." (Docket #15 at 10). Mr. Krumheuer further maintains that his wrongful discharge "after taking FMLA leave constitutes the type of severe and outrageous conduct enunciated in" Yeager v. Local

Union 20, 6 Ohio St.3d 369, 453 (1983).[7] Id. In his affidavit, Mr. Krumheuer states that, he "suffered severe emotional distress as a result of Defendant's actions." (Krumheuer Aff. at ¶10).[8]

GAB argues that Mr. Krumheuer has failed to establish that "the termination of his employment was in any way uniquely distressing beyond the stress inherent in losing one's job." (Docket #13 at 19, citing Krumheuer Dep. at 153). GAB states that under Ohio law, "termination of one's employment is not actionable even though it 'may have seemed unfair, was unpleasant and perhaps even shocking' because these things are to be expected in that not infrequent situation." (Id. at 19-20, citing Adityanjee v. Case Western Reserve University, 156 Ohio App.3d 43, 442 (2004), citing Hanley v. Riverside Methodist Hosp., 78 Ohio App.3d 73 (1991).

"In a case for intentional infliction of emotional distress, a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of plaintiff's serious emotional distress." Phung v. Waste Mgt., Inc., 71 Ohio St.3d 408, 410 (1994), citing Reamsnyder v. Jaskolski, 10 Ohio St.3d 150 (1984).

---

[7] Yeager is distinguishable from the instant matter. Mr. Yeager alleged claims for defamation, tortious interference, invasion of privacy, false light, and intentional infliction of emotional distress for conduct that occurred during a picketing incident with union employees. It is not an employment termination case.

[8] GAB asks the Court to strike this statement as being wholly conclusory. The Court declines to strike the statement. The deficiencies in paragraph 10 of Mr. Krumheuer's affidavit go to the weight or viability of the evidence he presents vis-a-vis Fed.R.Civ.P. 56 and will be addressed on that basis.

Mr. Krumheuer has presented no evidence as to GAB's intent and has "failed to meet his burden of proof to establish that [GAB's] actions were the proximate cause of any serious psychic injury or ailments." Adityanjee, 156 Ohio App.3d at 443.  Mr. Krumheuer did not seek psychiatric care.  See id.  He simply testified that, "it's significant when you're laid off from your job when you had been performing according to the standards that have been in place, and the distress of losing insurance, losing income. It's very unsettling." (Krumheuer Dep. at 153). Mr. Krumheuer has "produced no evidence that [GAB] caused emotional distress so serious that 'a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." Adityanjee, 156 Ohio App.3d at 443, quoting Heiner v. Moretuzzo, 73 Ohio St. 80, 83 (1995).

Based on the foregoing, GAB will be entitled to summary judgment on Count Six of Plaintiff's Complaint.

### IV. CONCLUSION

For the reasons set forth above, the Court grants Defendant's motion to strike in part.  (Docket #16).  The Court will strike paragraph 3 of the Krumheuer Aff., attached to Mr. Krumheuer's brief in opposition. (Docket #15). Defendant's motion for summary judgment with respect to all of Plaintiff's claims against them is granted and Plaintiff's complaint is dismissed (Docket #13).

IT IS SO ORDERED.

/s/Lesley Wells  
UNITED STATES DISTRICT JUDGE

Dated: 27 September 2010

20